Paul J. EVERSON and Michelle J. Everson,
Plaintiffs,

PEKIN INSURANCE COMPANY,
Intervening Plaintiff-Respondent,

v.

Richard J. LORENZ and Lorenz Land Development,
Inc., Defendants-Third-Party
Plaintiffs-Appellants,

Sharon JEANQUART, individually, and d/b/a Jean-
quart Realty and ACE American Insurance
Company, Third-Party Defendants.

Supreme Court

*No. 2003AP1331. Oral argument January 14, 2005.—Decided
April 22, 2005.*

2005 WI 51

(Also reported in 695 N.W.2d 298.)

For the defendants-third-party plaintiffs-appellants there was a brief by *Mark S. Des Rochers* and *Lawrence & Des Rochers, S.C.,* St. Nazianz, and oral argument by *Mark S. Des Rochers.*

For the intervening plaintiff-respondent there was a brief by *Monte E. Weiss* and *Weiss Law Office, S.C.,* Milwaukee, and oral argument by *Monte E. Weiss.*

An amicus curiae brief was filed by *Troy D. Thompson, Jonathan M. Ward* and *Axley Brynelson, LLP,* Madison, on behalf of Civil Trial Counsel of Wisconsin and Wisconsin Insurance Alliance.

¶ 1. N. PATRICK CROOKS, J.   This case comes before us on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2001–02).[1] Richard Lorenz and Lorenz Land Development, Inc. (Lorenz) seek review of an order of the Circuit Court for Calumet County, Donald A. Poppy, Judge, granting Intervenor Pekin Insurance Company's (Pekin) motion for summary judgment. This case presents the issue of whether Pekin's insurance policy provides coverage to its insured, Lorenz, for strict responsibility misrepresentation and/or negligent misrepresentation claims filed against it by Paul and Michelle Everson (Everson).

¶ 2.   The court of appeals certified three questions to this court: (1) Does an alleged strict responsibility misrepresentation and/or negligent misrepresentation in a real estate transaction constitute an "occurrence" for the purpose of a commercial general liability insurance policy such that the insurer's duty to defend the insured is triggered?; (2) What allegations must a complaint contain to plead sufficiently "loss of use" within the meaning of a commercial general liability insurance policy?; and (3) Under what circumstances does a misrepresentation, negligent or strict responsi-

---

[1] Unless otherwise indicated all references to Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § (Rule) 809.61 states, in relevant part: "The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

5

bility, cause the "loss of use" of property such that a "causation nexus" is established?

¶ 3.  We conclude that since there is no coverage based on Everson's complaint and the language of the Pekin insurance policy, Pekin has no duty to defend and no duty to indemnify Lorenz against Everson's claims for strict responsibility and/or negligent misrepresentation. The alleged misrepresentation was not an "occurrence" within the meaning of the policy. We hold that Everson must plead more than "damages" in relation to the misrepresentation claims to plead sufficiently a "loss of use" under the policy. We further conclude that since the complaint fails to allege "property damage," in that there is no allegation of an "occurrence," and no allegation of "loss of use," there clearly is not a sufficient allegation of "causation nexus." The "property damage" was caused by defects in the property, not by any misrepresentations of Lorenz.

## I. FACTS

¶ 4.  For the purposes of this review, the facts of this case are undisputed. Lorenz, a real estate developer, purchased vacant land in Brillion, Wisconsin in 1997. This property eventually became the subdivision known as Deer Run Estates. Everson bought a parcel in the subdivision from Lorenz, Lot 31, for the purpose of constructing a single family home. Everson accepted the offer on June 29, 2000.

¶ 5.  After the transaction was completed, Everson determined that a portion of Lot 31 was located within a 100–year flood plain. As a result, Everson filed a complaint against Lorenz on March 18, 2002.[2] The

---

[2] The original complaint was filed on March 18, 2002, in Outagamie County Circuit Court. However, the parties stipu-

claims alleged in the complaint were as follows: (1) negligent misrepresentation; (2) strict responsibility misrepresentation; (3) intentional misrepresentation; and (4) breach of contract. Specifically, Everson alleged that Lorenz represented that no portion of the property (Lot 31) lay within a 100–year flood plain.[3] As a result, the construction of the home would not be possible in the location that Everson wished to build. Everson's complaint alleged that the property was "unbuildable," and asked for damages in the amount of $37,000.[4]

¶ 6.   At the time of the purchase, Pekin insured Lorenz under a commercial general liability policy. Following the initiation of suit by Everson, Lorenz tendered its defense to Pekin. Pekin has since moved to intervene, bifurcate the insurance coverage issues from the liability and damage issues, and stay all liability and damage issues until the insurance coverage issues have been decided. The circuit court granted this motion,

lated that because the plaintiffs and defendants reside in Calumet County, and the land in question is in Calumet County, that it would be appropriate for the venue to be changed. The Outagamie County Circuit Court, John A. Des Jardins, Judge, ordered that the case be transferred to Calumet County on May 13, 2002.

[3] Everson attached to the complaint a Real Estate Condition Report that was completed by Lorenz prior to the purchase. In the report, Lorenz affirmatively states that "[s]ome lots as shown on Exhibit A attached have as part of their back lots land that lies within the approximate 100 year flood plain. On lots 14–22 this area falls in the wooded ravine area and for lots 23–27, *21* & 32 it falls within the grassland area on the back of the lots." (Emphasis added.)

[4] The damages that Everson claimed were, for the most part, damages incurred during the preparation for construction, such as building plans, permits, foundation, windows, etc.

and Pekin subsequently hired counsel to represent Lorenz on the merits of the pending action against Everson.

¶ 7.   On February 11, 2003, Pekin filed a motion for summary judgment on the issues of insurance coverage, including the duty to defend and indemnify. The circuit court, the Honorable Donald A. Poppy presiding, granted Pekin's summary judgment motion in a written order as follows: (1) No coverage exists under Pekin's policy of insurance, for the complaint and causes of action of Everson in the present matter; (2) no duty exists on behalf of Pekin·to defend Lorenz for the complaint filed by Everson in the present matter; (3) no duty exists on behalf of Pekin to indemnify Lorenz for the complaint filed by Everson in this matter; and (4) the stay of discovery memorialized in the court's order dated August 8, 2002 is hereby dissolved.

¶ 8.   Lorenz appealed the circuit court's grant of summary judgment. The court of appeals certified the case to this court. We accepted certification and now affirm the order of the circuit court.

## II. STANDARD OF REVIEW

¶ 9.   We review a circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court, and benefiting from its analysis. *Atkins v. Swimwest Family Fitness Center,* 2005 WI 4, ¶ 11, 277 Wis. 2d 303, 691 N.W.2d 334. According to Wis. Stat. § 802.08(2), summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 10. We also address issues regarding the interpretation of an insurance contract. Such interpretation, we have held, presents a question of law which we review de novo. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

## III. ANALYSIS

¶ 11. The determinative issue presented in this case is whether Pekin's insurance policy provides coverage to Lorenz for the strict responsibility and/or negligent misrepresentation claims filed by Everson. We have held that an insurer's duty to defend its insured is triggered by comparing the allegations of the complaint to the terms of the insurance policy. *See Smith v. Katz,* 226 Wis. 2d 798, 806, 595 N.W.2d 345 (1999). " 'These allegations must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy. . . . ' " *Qualman v. Bruckmoser,* 163 Wis. 2d 361, 364, 471 N.W.2d 282 (Ct. App. 1991) (quoting *Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 557, 148 N.W.2d 103 (1967).

¶ 12. Since Pekin's duty to defend is determined by the language in both the policy provisions and the complaint, we set forth the relevant portions of each. The insurance policy states in part:

SECTION 1– COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages be-

9

cause of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or suit that may result. . . .

b.  This insurance applies to . . . "property damage" *only if:*

(1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) *The . . . "property damage" occurs during the policy period.*

. . . .

SECTION V – DEFINITIONS

. . . .

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

15. "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. . . .

(Emphasis added.)

¶ 13.  As previously stated, the four claims that Everson alleges against Lorenz are strict responsibility misrepresentation, negligent misrepresentation, inten-

10

tional misrepresentation, and breach of contract.[5] The relevant allegation of the complaint is as follows:

> 7. Subsequently, the Plaintiffs discovered that a substantial portion of Lot 31 lay within the 100 year flood plain making the construction of the home which they wished to construct on the property impossible in the location in which the Plaintiffs wished to build based upon the pre-sale representations of LORENZ, rendering the property unbuildable for the Plaintiffs and causing the Plaintiffs to incur damages as a result in excess of $37,000.00.

¶ 14.   In looking at the four corners of the complaint and the insurance policy, we recognize that "[o]ur objective is to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract." *Benjamin v. Dohm,* 189 Wis. 2d 352, 359, 525 N.W.2d 371 (Ct. App. 1994) (citation omitted). Accordingly, we must not rewrite the insurance policy to bind an insurer to a risk which the insurer did not contemplate and for which it has not been paid. *Id.* at 365.

A. "OCCURRENCE"

¶ 15.   Pekin's insurance policy would cover liability for "property damage" if it resulted from an "occurrence." In the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although the term "accident" was not defined by the

---

[5] The relevant claims for this coverage inquiry are strict responsibility misrepresentation and negligent misrepresentation. The claims for intentional misrepresentation and breach of contract are excluded from coverage under the terms of Pekin's insurance policy.

policy, this court has often relied on dictionary definitions for assistance. *See Am. Fam. Mut. Ins. Co. v. American Girl, Inc.,* 2004 WI 2, ¶ 37, 268 Wis. 2d 16, 673 N.W.2d 65; *Doyle v. Engelke,* 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998). Black's Law Dictionary defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." *Black's Law Dictionary* 15 (7th ed. 1999). Additionally, we have defined accident to mean " '[a]n unexpected, undesirable event' " or " 'an unforeseen incident' " which is characterized by a " 'lack of intention.' " *Doyle,* 219 Wis. 2d at 289 (quoting *The American Heritage Dictionary of the English Language* 11 (3d ed. 1992)).

¶ 16.   Lorenz, in relying on these definitions, argues that the misrepresentation was an "accident." It contends that a reasonable insured would expect that the Pekin policy definition of "occurrence" as an "accident" would cover the typographical error relied upon by Everson in the pre-sale representation. In support of this claim, Lorenz cites a Maryland Court of Appeals case, *Sheets v. Brethren Mutual Insurance Co.,* 679 A.2d 540 (Md. 1996), where the court held that negligent misrepresentation can be considered an "accident." In *Sheets,* the insureds sold their farmhouse. After the transaction, the buyers claimed that the insureds intentionally and negligently misrepresented that the septic system at their farmhouse was in "good working condition." *Id.* at 541. The buyers alleged that the septic system began leaking and flooding, which required it to be replaced. The court acknowledged that "negligent misrepresentation is a form of negligence," and that "an act of negligence constitutes an 'accident' under a

12

liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.' "[6] *Id.* at 548 (quoting *Harlyesville v. Harris & Brooks,* 235 A.2d 556, 559 (Md. 1967)).

¶ 17. Lorenz insists that our negligence analysis in *Doyle,* a case involving allegations of negligent supervision of employees, is "strikingly similar" to the analysis in *Sheets. See Smith,* 226 Wis. 2d at 822. In *Doyle,* we held that an insurance policy using the term "event" covered negligent acts. The policy defined "event" the same as this policy defines "occurrence," as " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Doyle,* 219 Wis. 2d at 289. The court then held that both the definition for "negligence" and "accident" "center on an unintentional occurrence leading to undesirable results." *Id.* at 290. As a result, the court found that a reasonable person would expect the policy provision using the term "event" to cover negligent acts. *Id.* at 289–90. Lorenz asks this court to extend that holding to acts involving negligent misrepresentation.

¶ 18. This court has never specifically held that strict responsibility and/or negligent misrepresentation

---

[6] The court in *Sheets v. Brethren Mutual Insurance Co.,* 679 A.2d 540, 551 (Md. 1996), recognized that jurisdictions split on whether a negligent misrepresentation can constitute an "occurrence." The court stated:

> We prefer to follow those cases that treat negligent misrepresentation like other forms of negligence, which are covered as accidents if the insured did not expect or foresee the resulting damage. In accordance with our own precedent outlined above, the ultimate inquiry is whether the resulting damage is "an event that takes place without one's foresight or expectation."

*Id.* (citation omitted).

are similar to other kinds of negligence so as to categorize them as "accidents." *See Smith*, 226 Wis. 2d at 822. We specifically left the question open in *Smith*, to determine if "these torts are sufficiently different from other kinds of negligence to preclude their categorization as 'accidents' " in insurance liability policies. *Id.* We now conclude that Lorenz's misrepresentation cannot be considered an "accident" for the purpose of Pekin's liability insurance coverage.

¶ 19.    Lorenz's misrepresentation can be defined as an "act of making a false or misleading statement about something. . . ." *Black's Law Dictionary* 1016 (7th ed. 1999). To be liable, Lorenz must have asserted a false statement, and such an assertion requires a degree of volition inconsistent with the term accident. *See Sheets*, 679 A.2d at 552–53 (Karwacki, J., dissenting). Although this assertion may be prompted by negligence, it is nevertheless devoid of any suggestion of accident. *See C.Y. Thomason Co. v. Lumbermens Mut. Cas. Co.*, 183 F.2d 729 (4th Cir. 1950). More specifically: "Injury that is caused by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1118 (7th Cir. 1995).

¶ 20.    This interpretation is distinguishable from our previous discussion of the terms "event," "negligence," and "accident" which, in *Doyle*, centered on an unintentional, rather than volitional, act. *See Doyle*, 219 Wis. 2d at 289. Accordingly, in this case, we do not determine that injury or damage prompted from a negligent misrepresentation is ipso facto caused by "accident," within the meaning of commercial general

liability policies. *See* J.P. Ludington, Annotation, *Liability Insurance: Accident or "Accidental" as Including Loss Resulting from Ordinary Negligence of Insured or His Agent,* 7 A.L.R. 3d 1262, § 4 (1966). We conclude instead that where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an "occurrence" under the liability insurance policy.

¶ 21.  This holding is similar to a case decided by the Seventh Circuit, *Red Ball Leasing, Inc. v. Hartford Accident & Indemnity Co.,* 915 F.2d 306 (7th Cir. 1990). There, the insured financed the sale of four trucks to a lessee. The insured later repossessed the trucks based on the mistaken belief that the lessee had defaulted on his payments. The insured was sued and claimed that it should be defended and reimbursed under the terms of its insurance policy. The insurance company refused to defend, arguing that the conversion was not an "accident" triggering such a duty. The court held that coverage was not required for the conversion because it was an intentional act, and intentional acts are not "accidents" under the terms of the policy. *See Mindis Metals, Inc. v. Transp. Ins. Co.,* 209 F.3d 1296 (11th Cir. 2000). Specifically, the court held:

> A volitional act does not become an accident simply because the insured prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. . . . However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Red Ball Leasing,* 915 F.2d at 311 (citations and footnote

omitted). Since this determination in *Red Ball,* several courts have cited this holding positively. *See Mindis Metals, Inc.,* 209 F.3d at 1301 (Plaintiff intended to damage railcars and use them for scrap metal. This action may have been prompted by a mistake as to ownership, but there was nothing "accidental" about it.); *City of Jasper v. Employers Ins. of Wausau,* 987 F.2d 453 (7th Cir. 1993) (finding that an insurance company had no duty to defend the City of Jasper against a suit alleging that the City negligently issued two permits, because issuing the permits was an intentional act and thus not an "accident"); *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.,* 136 F.3d 1116, 1125 (7th Cir. 1998) ("(Defendant's) (wrongful) repossession of the automobile, like that in Red Ball, certainly was an intentional and affirmative act . . . it cannot be construed an 'accident' under the terms of the policy"); *Allstate Ins. Co v. Norris,* 795 F. Supp. 272 (S.D. Ind. 1992) (no "accident" where the insured fired several shots in an attempt to "pin down" an unidentified man, but instead struck a passerby).

¶ 22.    Likewise, Lorenz may have made a mistake of fact and/or error in judgment, but it later acted with volition. It is clear that Lorenz intended to give Everson information as to whether the property was within the 100–year flood plain. *See Red Ball,* 915 F.2d at 311. What happened here, stripped to its essentials, is that an "action," not an "accident," of Lorenz gave Everson the misleading information. *See City of Jasper,* 987 F.2d at 457. Even if there was a mistake made in filling out the Real Estate Condition Report, and that mistake induced reliance, the decision to give Everson the report is not an "accident" within the meaning of the policy. *See Red Ball,* 915 F.2d at 311.

## B. "LOSS OF USE"

¶ 23.   The next question we address is whether Everson's complaint contains allegations of "property damage." As stated, the terms of Pekin's policy define "property damage" as "[p]hysical injury to tangible property, including . . . loss of use of that property." Both parties agree that there were no acts or omissions that resulted in physical injury to the property involved here. Accordingly, our analysis is confined to whether Everson's complaint alleges a "loss of use."

¶ 24.   Lorenz asserts that Everson's complaint sufficiently pleads a claim for "property damage." Lorenz argues that because Everson's complaint mentions damages that resulted from the misrepresentation, the claim falls within Pekin's insurance policy. For support of this claim, Lorenz relies on the court of appeals' decision in *Western Casualty & Surety Co. v. Budrus,* 112 Wis. 2d 348, 332 N.W.2d 837 (Ct. App. 1983). There, a farmer purchased seed from Budrus, a feed mill operator insured by Western. Budrus mistakenly gave the farmer the wrong seed, which was subsequently planted. The farmer sued for negligence, and Budrus counterclaimed against Western demanding Western defend him on the claim. The court held that because pleadings are to be liberally construed, the farmer's claim, although not artfully worded, included a claim for loss of use, and therefore created a duty for Western to defend. *See id.* at 352. Lorenz argues that this court, like the court in *Budrus,* should interpret Everson's complaint liberally, and find that the damages claimed plead sufficiently "loss of use."

¶ 25.   While we agree with Lorenz that we are to construe pleadings liberally, we disagree that Everson

17

has sufficiently pleaded "loss of use" and thus "property damage." The relief that Everson demands in his complaint falls within the court of appeals' holding in *Qualman* and this court's holding in *Smith*. In *Qualman*, a homeowner was sued by the buyer of his property for breach of contract and misrepresentation concerning structural defects. In the complaint, the plaintiff pled each misrepresentation count with the allegation of having sustained "damages." The court held: "The damages for such claims, if proven, would be the difference between the market value of the property at the time of purchase and the amount actually paid. Therefore, the damages alleged by the Qualmans are pecuniary in nature and do not constitute property damage as defined by the insurance policy." *Qualman*, 163 Wis. 2d at 366 (citation omitted). Accordingly, the court held that when analyzing the insurance policy against the allegations in the complaint, "[p]roperty damage within the meaning of the policy was not alleged." *Id.*

¶ 26.    More recently, in *Smith*, the insured had sold a vacant lot to the plaintiffs. During construction of a house, the plaintiffs uncovered the existence of underground springs. These springs allegedly caused the foundation to collapse on multiple occasions. When the plaintiffs filed suit, the complaint never alleged property damage. Instead, the complaint merely stated that the " 'plaintiffs have sustained damages.' " *Smith*, 226 Wis. 2d at 812. As a result, the court decided that the complaint did not give the insurer fair notice that the claims, based on the alleged misrepresentations, involved "property damage." *Id.* at 816. The court concluded that "a complaint claiming strict responsibility misrepresentation or negligent misrepresentation must contain some statement about physical injury to

18

tangible property, some reference to loss of use, or some demand for relief beyond money damages if the complaint is to satisfy the requirement that 'property damage' be alleged within the four corners of the complaint." *Id.* at 817 (footnote omitted).

¶ 27.   Similarly, in Everson's complaint, there is no mention of "property damage." As stated, the complaint simply alleges that the property was "unbuildable" for the plaintiffs and that they were forced to incur "damages" as a result.[7] Like the complaints in *Qualman* and *Smith,* Everson's complaint only mentions "damages" as a result of the alleged misrepresentation. We give this language its plain meaning and conclude that Everson's complaint did not trigger insurance coverage for Lorenz and thus a duty for Pekin to defend Lorenz. Without explicitly alleging that Lorenz's misrepresentation caused "property damage," Pekin was not on notice that this claim falls within the scope of the policy. *See Smith,* 226 Wis. 2d at 817. Just as in *Smith,* however, a differently worded complaint, one that would provide fair notice that the misrepresentation claims caused a "loss of use," might have yielded a different result. *Id.* at 817–18.

¶ 28.   Our holding here is bolstered by the insufficiency of evidence to support a claim for "loss of use." Therefore, even if we decided that "loss of use" was properly pled, it is clear from our review of the record that such a claim could not be supported. Particularly,

_____

[7] We also decline to accept the argument that damages for "loss of use" were implicitly alleged in the complaint. Such allegations would not put an insurance company on notice that Everson sustained "property damage." We will not rewrite a complaint that does not clearly identify that coverage is warranted.

in Everson's deposition, he makes no allegation that his damages constituted a "loss of use":

Q    It was eventually determined that the foundation that was poured on your lot did not have to be moved or altered, that it was in compliance. Correct?

A    Correct.

Q    And you could have built the home you intended to build on that foundation. Correct?

A    Correct.

Q    Why is it that you decided that it was no longer workable to build that home.

A    The lot that we purchased was not the lot that we ended up with. It was represented inaccurately. And our plans for the backyard for landscaping, it would have affected what we wanted to do.

Q    What plans specifically would you not have been able to do.

A    We were going to do some landscaping along the back lot line that would have created a berm-type thing with some flowers, graded, slowly graded the back of the house away.

At most, Everson has stated that the existence of the flood plain has caused him inconvenience. By his explanation that the heart of the complaint is that the landscaping plans must be altered, it becomes quite clear that there is no claim of "loss of use."

¶ 29. In Wisconsin, a sufficient claim for "loss of use" requires that the property be rendered useless. *See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 50, 233 Wis. 2d 314, 607 N.W.2d 276; *Sola Basic Indus., Inc. v. U.S. Fid. & Guar. Co.*, 90 Wis. 2d 641, 654, 280 N.W.2d 211 (1979). For support, we look to our decision in *Sola Basic*. There, the insured negligently repaired a transformer it had sold to the buyer, which resulted in its removal from the buyer's facility and required that it be completely rebuilt. This court held that damage to tangible property can constitute a "loss of use" if the property is made useless.[8] *Id.* Accordingly, the court

---

[8] In *Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co.*, 90 Wis. 2d 641, 654, 280 N.W.2d 211 (1979), this court examined precedent from other jurisdictions and derived four basic principles pertaining to CGL policies. For the purposes of our review, the fourth principle is most relevant. It states: " 'tangible property may be damaged in that it is diminished in value or made useless, irrespective of actual physical injury to the tangible property.' " *See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 44, 233 Wis. 2d 314, 607 N.W.2d 276.

Since these principles were developed in *Sola Basic*, we held in *Wisconsin Label* that use of the phrase "diminution in value" must be read in its proper context. Specifically, we held:

> Sola Basic was interpreting the 1966 definition of "property damage," which omitted any requirement that an injury be "physical" in order to trigger coverage. As *Hauenstein* held, the broad 1966 definition therefore could encompass "diminution in value" of tangible property, even without any physical injury.
>
> The 1966 policy form was the standard in the insurance industry until a new form was promulgated in 1973. The post-1973 forms define "property damage" much more specifically than the 1966 form. The first part of the 1973 definition explicitly requires

determined that the damage and removal of the transformer constituted a "loss of use," because the plaintiff could no longer operate the furnace until the transformer was replaced.

¶ 30. This "uselessness" requirement that originated in *Sola Basic* has been accepted in similar cases. In *McDowell-Wellman Engineering Co. v. Hartford Accident & Indemnity Co.,* 711 F.2d 521 (3d Cir. 1983), the Third Circuit discussed the collapse of an ore bridge and a claim by a steel company that the collapse resulted in property damage to its blast furnace, which used the bridge for shipment of raw materials. The court held that the owner of the blast furnace did not suffer a "loss of use" because the collapse of the ore bridge did not impair the operation of the blast furnace or make it useless. To the contrary, the collapse of the ore bridge only resulted in the "loss of use" of the ore bridge. *See Hartzell Indus., Inc. v. Fed. Ins. Co.,* 168 F. Supp. 2d 789 (S.D. Ohio 2001). The court in this case

"physical" injury; the second part requires "loss of use" of tangible property that is not physically injured. Unlike the 1966 definition, neither part of the later definition is broad enough to encompass mere "diminution of value" of a product in the absence of physical injury or loss of use.

*Id.,* ¶¶ 46–47 (citations omitted).

Our ultimate holding in *Wisconsin Label,* with respect to Sola Basic, was as follows:

[a]ny suggestion in Sola Basic that CGL policies provide coverage for diminution in value that is not caused by physical injury or loss of use is inconsistent with the definition of "property damage" in post-1973 policies. We therefore conclude that the Policy provides no coverage for diminution in value in the absence of physical injury or loss of use.

*Id.,* ¶ 48.

did not find liability, and thus distinguished *Sola Basic,* because the removal of the transformer in *Sola Basic* "rendered Thunder Bay's furnaces inoperable until the transformer was replaced. Here the collapse of the ore bridge did not so affect [the plaintiff's] blast furnaces which not only remained operable but actually continued to be operated by [the plaintiff] without interruption." *McDowell-Wellman Engineering Co.,* 711 F.2d at 526. Therefore, because the blast furnace was not rendered "useless," no "loss of use" damages to the blast furnace were covered under the policy.

¶ 31. The "uselessness" requirement was recently reaffirmed in *Wisconsin Label.* In that case, there were damage claims against the insured that resulted from the lost profits of packages that were sold at the wrong price and the cost of handling and relabeling the unsold packages. *Wisconsin Label,* 233 Wis. 2d, ¶¶ 8–10; *see* Arnold P. Anderson, *Wisconsin Insurance Law,* § 5.54 (4th ed. 1998). We held that there was no coverage, and that for damages to constitute the "loss of use" they must be "rendered useless." *Wisconsin Label,* 233 Wis. 2d, ¶ 50; (citing *Sola Basic,* 90 Wis. 2d at 654).

¶ 32. Here, Everson's claim does not amount to anything approaching the uselessness of the property, as is required to satisfy Pekin's insurance policy provisions. There must be a loss of use, such as the loss of use of a transformer. *See Sola Basic,* 90 Wis. 2d at 654. In this case, Everson testified that his house could have been built where the foundation was already poured, only the landscaping he desired was affected. While Everson's property may now be less useful, aesthetic concerns and landscaping problems do not render the property useless.

23

## C. CAUSATION NEXUS

¶ 33.   The next certified question asks us to determine under what circumstances a misrepresentation causes the "loss of use" of property such that a "causation nexus" exists between the alleged misconduct and the damage claimed. "Without such a 'causation nexus,' the alleged occurrence cannot cause property damage." *Smith,* 226 Wis. 2d at 823. We conclude that the misrepresentation alleged in the complaint is not sufficient to establish a "causation nexus" within the terms of Pekin's policy.

¶ 34.   Lorenz argues that the complaint's language clearly shows causation: "construction of the home which they wished to construct on the property [was] impossible in the location in which the Plaintiffs wished to build based upon the pre-sale representations of LORENZ. . . . " Lorenz also argues that, unlike *Smith,* there is an unbroken chain of causation presented between the "occurrence" and the "property damage." In *Smith,* we concluded that there were "too many 'interruptions' between the 'occurrence' and the 'property damage' — too many decisions and actions by other people — to show an unbroken chain of causation under the policies." *Id.* at 824. Lorenz claims that in a situation like the claim alleged here, this court should find that there was a sufficient allegation of "causation nexus."

¶ 35.   For support of this argument, Lorenz relies on the court of appeals' decision in *Jares v. Ullrich,* 2003 WI App 156, 266 Wis. 2d 322, 667 N.W.2d 843.[9] This case involved the alleged misrepresentations sur-

---

[9] The other case Lorenz argues that supports the claimed "causation nexus" is *Wood v. Safeco Insurance Co. of America,*

rounding the sale of property. The buyer's complaint stated that the property was infested with raccoons, other animals, and animal debris, and that the seller-insured failed to disclose that information. The court of appeals held that the "complaint sufficiently alleged a nexus between the alleged misrepresentation and the ensuing loss." *Id.*, ¶ 24.[10]

¶ 36. In *Jares,* the insurance policy at issue defined "property damage" as " 'physical injury to or destruction of tangible property, including loss of use. . . .' " *Id.*, ¶ 12. There, the court interpreted the definition of "property damage" as "loss of use" damages

---

980 S.W.2d 43 (Mo. App. E.D. 1998). There, a Missouri court of appeals held that there was a "causation nexus" in a claim that is similar to the issue before us. The insured, Wood, sold property to a buyer and represented that the property was not in a flood plain. After the transaction, the property flooded and the buyer alleged negligent misrepresentation. The buyer argued that if he had been advised of the existence of the flood plain, he would not have bought the property. The court held: "[w]hether or not the flooding damage is causally related to the misrepresentations should have been pursued by Insurer on behalf of Insured in Buyer's litigation, rather than against Insured in this litigation." *Id.* at 53 (citing *Sheets,* 679 A.2d at 544–45).

[10] The court of appeals distinguished *Smith v. Katz,* 226 Wis. 2d 798, 595 N.W.2d 345 (1999), by finding that in *Jares v. Ullrich,* 2003 WI App 156, 266 Wis. 2d 322, 667 N.W.2d 843, the property damage was discovered shortly after the residence was purchased, the defendant-sellers remained in full-ownership and control until closing, the residence already existed at the time of closing, and there was no allegation of intervening negligent acts by a third party. The court also held that *Qualman v. Bruckmoser,* 163 Wis. 2d 361, 471 N.W.2d 282 (Ct. App. 1991) and *Benjamin v. Dohm,* 189 Wis. 2d 352, 525 N.W.2d 371 (Ct. App. 1994), were not controlling, because the references to causation in those cases were dicta.

25

that flowed from the destruction of tangible property. Because the complaint alleged that the plaintiffs incurred repair and restoration costs, the court of appeals concluded that the "physical injury to . . . tangible property" requirement of "property damage" was met. The court also held that since the complaint alleged that the seller-insured's misrepresentations resulted in the loss of use of the property, the court determined that there was a sufficient allegation of "causation nexus."

¶ 37.    In this case, we have already concluded that the alleged misrepresentation was not an "occurrence" within the provisions of the insurance policy and that the complaint does not allege a "loss of use." We conclude, for the reasons set forth herein, that under such circumstances, "causation nexus" is not sufficiently alleged.

¶ 38.    In *Qualman,* the court of appeals held that the pre-sale misrepresentation involving the structural defects did not constitute "property damage." Rather, the preexisting structural defects caused the damage. The court concluded that "[t]here is no question that the defective condition of the house is an element of the Qualman's complaint. Nevertheless, those defects cannot be considered the *cause* of the Qualman's damages, even when interpreting both the complaint and the policy broadly." *Qualman,* 163 Wis. 2d at 367–68. Similarly, in *Benjamin,* the court of appeals held that there was no "causation nexus" between the misrepresentation claims against the insured and the damages sustained. In that case, the seller-insured sold a property that was on a landfill and, prior to closing, the buildings began to settle. The court of appeals relied on *Qualman,* and held that any "property damage" and resulting "loss of use" suffered were caused by the structural defects, not by the alleged misrepresentations. *Id.* at 363.

26

¶ 39.   We relied on both *Qualman* and *Benjamin* when we decided that there was no "causation nexus" in *Smith*. In *Smith,* we held that "[t]here is no 'causation nexus' in the Smiths' complaint because negligent misrepresentations do not cause ground water pressure or cracks in concrete foundations. . . ." *Smith,* 226 Wis. 2d at 824. Like the courts' holdings in *Qualman, Benjamin,* and *Smith,* we conclude that the "property damage" in this case was caused by the preexisting 100–year flood plain, not by any presale misrepresentation of Lorenz.[11] Since the complaint fails to allege "property damage" in that there is no allegation of an "occurrence," and no allegation of "loss of use," there is clearly not a sufficient allegation of a "causation nexus."

## D. EXCLUSIONS

¶ 40.   Lastly, although we decide this case on other grounds, we address briefly the insurance policy's exclusionary provisions. Pekin contends that even if the complaint contains allegations sufficient to trigger coverage, and thus its duty to defend in accord with the general coverage sections of its insurance policy, this court should still hold that there is no such duty because certain policy exclusions are applicable. Since there is no need to address the exclusionary provisions further, we merely acknowledge that Pekin has presented extensive arguments, citing Wisconsin and federal court cases, in support of its position that two exclusions apply here.

---

[11] Lorenz also argues that the "property damage" includes materials such as foundation, windows, building plans, and permits. Because the damages resulting from the purchase of those items were not alleged in the complaint, we decline to address them here.

## IV. CONCLUSION

¶ 41.  In sum, we conclude that since there is no coverage based on Everson's complaint and the language of the Pekin insurance policy, Pekin has no duty to defend and no duty to indemnify Lorenz against Everson's claims for strict responsibility and/or negligent misrepresentation. The alleged misrepresentation was not an "occurrence" within the meaning of the policy. We hold that Everson must plead more than "damages" in relation to the misrepresentation claims to plead sufficiently a "loss of use" under the policy. We further conclude that since the complaint fails to allege "property damage," in that there is no allegation of an "occurrence," and no allegation of "loss of use," there clearly is not a sufficient allegation of "causation nexus." The "property damage" was caused by defects in the property, not by any misrepresentations of Lorenz.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 42.  LOUIS  B.  BUTLER,  JR.,  J.  (*concurring*).   While I agree with Part II of Justice Bradley's dissent (that a negligent misrepresentation can constitute an "occurrence" under Pekin's insurance policy), I agree with the majority that the misrepresentation alleged in the complaint is insufficient to establish a "causation nexus" within the terms of that insurance policy. Majority op., ¶ 33. The preexisting 100—year flood plain in this case caused any "property damage," not Lorenz's presale misrepresentation. Majority op., ¶ 39. Accordingly, I join parts I, II and III(C) of the majority opinion. I therefore respectfully concur.

¶ 43. ANN WALSH BRADLEY, J. (*dissenting*).   In *Smith v. Katz*, 226 Wis. 2d 798, 822, 595 N.W.2d 345

28

(1999), this court left open the question of whether a negligent misrepresentation can constitute an "occurrence" or "accident" for purposes of general liability insurance. Today, the majority seemingly resolves this matter, but does so by skewing the focus of the inquiry and ignoring the "negligent" component of the negligent misrepresentation. Because I conclude that the alleged negligent misrepresentation in this case can constitute an "occurrence," and because the Eversons' complaint sufficiently alleges the remaining elements necessary to trigger a duty to defend, "loss of use" and "causation," I respectfully dissent.

I

¶ 44.   The majority concludes that "where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." Majority op., ¶ 20. The problem with the majority opinion lies not with this conclusion. Rather, the problem arises when in identifying the relevant act, the majority shifts focus from a specific non-volitional act to a more general volitional act. Of course, if the level of generality is extended far enough, a volitional act can always be found somewhere down the line.

¶ 45.   As in many cases, the relevant facts here drive the analysis. Lorenz gave the Eversons a Real Estate Condition Report that contained a typographical error, mistaking Lot 21 for Lot 31. The parties agree that the Eversons' Lot 31 has a portion of the property in the flood plain, but the Real Estate Condition Report failed to disclose that fact. Instead, the report erroneously listed Lot 21 as part of the flood plain.

¶ 46.   The Eversons attached to the complaint the Real Estate Condition Report which stated, "[s]ome lots

as shown on Exhibit A attached have as part of their back lots land that lies within the approximate 100[-]year flood plain. On lots 14–22 this area falls in the wooded ravine area and for lots 23–27, 21 & 32 it falls within the grassland area on the back of the lots." (Emphasis added.)

¶ 47. According to the complaint, the Eversons received the Real Estate Condition Report, which provided that "no portion of Lot 31 lay within the 100[-]year flood plain." When they purchased Lot 31, the Eversons received a Warranty Deed, incorporating by reference the representations contained in the report. After the transaction was completed, the Eversons discovered that a substantial portion of Lot 31 was located within a 100–year flood plain. They alleged that the flood plain made "the construction of the home which they wished to construct on the property impossible in the location in which the Plaintiffs wished to build based upon the pre-sale representations of LORENZ." As a result, they sustained damages having already paid for items that they could no longer use.

¶ 48. The majority, however, tucks away in a footnote the relevant facts of the negligent misrepresentation claim. *Id.*, ¶ 5, n. 3. In doing so, it shifts the focus away from the accidental typographical error contained in the report and instead focuses in the text on the general action that Lorenz gave the report to Everson. *Id.*, ¶ 22. Consequently, the majority then opines that there is no accident here at all because the decision to give Everson the report is not an "accident." *Id.* Accordingly, the majority concludes that because there is no accident, there is no coverage under the policy.

¶ 49. No one asserts that the "act" of giving the report was an accident. Of course it was volitional or intentional. As part of the real estate transaction, Lorenz needed to provide the Real Estate Condition Report.

¶ 50. Stripped to its essentials, the majority here determines that an accidental act (a typographical error) is not an accident. How can it arrive at such an anomalous conclusion? Only by skewing the focus as described above and ignoring the "negligent" component of a negligent misrepresentation claim.

## II

¶ 51. As noted, the question left open by *Smith,* 226 Wis. 2d 798, and that we address today is whether the alleged negligent misrepresentation of Lorenz can constitute an "occurrence" under Pekin's insurance policy. In the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Because the policy does not elaborate on the term "accident," the majority proffers two definitions for guidance: (1) "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated;" and (2) " '[a]n unexpected, undesirable event' " or " 'an unforeseen incident' " which is characterized by a " 'lack of intention.' " Majority op., ¶ 15 (citations omitted).

¶ 52. Both of the definitions cited by the majority center on an unintentional and unforeseeable event leading to undesirable results. In this case, the alleged negligent misrepresentation of Lorenz meets these criteria. However, in its efforts to convince the reader that there was no accident, the majority emphasizes only

"misrepresentation" and ignores the "negligent" component of the negligent misrepresentation claim. It defines Lorenz's misrepresentation as an " 'act of making a false or misleading statement about something . . . .' " *Id.,* ¶ 19 (citing *Black's Law Dictionary* 1016 (7th ed. 1999)). This characterization in itself is a "false and misleading statement," for the conduct at issue is Lorenz's alleged *negligent* misrepresentation.

¶ 53. *Negligent* misrepresentation is defined as "[a] careless or inadvertent false statement in circumstances where care should have been taken." *Black's Law Dictionary* 1016 (7th ed. 1999). Unlike the majority, I have little trouble concluding that a reasonable insured would expect the term "accident" to include a "careless or inadvertent false statement." On this matter, I find the case of *Sheets v. Brethren Mut. Ins. Co.,* 679 A.2d 540 (Md. 1996), instructive.

¶ 54. In *Sheets,* the Maryland court of appeals was confronted with whether negligent misrepresentation constituted an "occurrence" under a general liability insurance policy. Ultimately, the court was persuaded by a number of cases recognizing that negligent misrepresentation can be considered an "occurrence" or "accident." *Id.* at 550 (citing *SL Industries v. American Motorists Ins. Co.,* 607 A.2d 1266, 1276–77 (N.J. 1992) ("Courts generally have held that although the insurer must defend an insured who is accused of reckless, negligent, or innocent misrepresentations, no defense is required when the insured is accused of intentional misrepresentations."); *Universal Underwriters v. Youngblood,* 549 So.2d 76, 78, 79 (Ala. 1989) ("[t]he term 'accident' does not exclude events that occur through negligence," and that "[a]ctions for innocent or reckless misrepresentation have held to be covered"); *First Newton Nat. Bank v. Gen. Casualty Co.,* 426

N.W.2d 618, 625–26 (Iowa 1988) ("[t]he very definition of 'negligent misrepresentation' connotes negligent rather than intentional conduct. . . . '[W]here a complaint is framed in terms of an insured's negligence . . . there is a duty to defend.' ")).

¶ 55.  As this court stated in *Smith,* 226 Wis. 2d at 822, the decision in *Sheets* is "strikingly similar" to our negligence analysis in *Doyle v. Engelke,* 219 Wis. 2d 277, 580 N.W.2d 245 (1998). In *Doyle,* we held that an insurance policy using the term "event" covered negligent acts. 219 Wis. 2d at 290. The policy at issue in that case defined "event" the same as this policy defines "occurrence," as " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Id.* at 289. We observed that both the definition for "negligence" and "accident" "center on an unintentional occurrence leading to undesirable results." *Id.* at 290. Thus, we concluded that a reasonable insured would expect the policy provision using the term "event" to cover negligent acts. *Id.* Because the conduct in this case also involves a negligent act, *Doyle* cannot be meaningfully distinguished.

¶ 56.  Accordingly, I would conclude that a negligent misrepresentation can constitute an "occurrence" or "accident" for purposes of general liability insurance. After all, language in an insurance policy must be construed as understood by a reasonable person in the position of an insured. *Frost v. Whitbeck,* 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225 (citing *Kremers-Urban Co. v. Am. Employers Ins.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). In this case, a reasonable person would not split the legal hair advanced by the majority. *See* majority op., ¶ 20. Rather, a reasonable

33

person would expect that the policy would cover the typological error relied upon by Everson in the pre-sale representation.[1]

### III

¶ 57.   Having determined that the alleged negligent misrepresentation can constitute an "occurrence," I consider next whether the Eversons' complaint sufficiently alleges the remaining elements necessary to trigger a duty to defend, "loss of use" and "causation." Again, the majority opinion blurs the inquiry by focusing much of its discussion on the sufficiency of the evidence or the underlying merits of the claim rather than on the four corners of the complaint and the terms of the insurance policy. *Id.,* ¶¶ 28–32. However, "[t]he duty to defend focuses on the nature of the claim and *has nothing to do with the merits of the claim." Smith,* 226 Wis. 2d at 806 (citing *Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967)) (emphasis added). Accordingly, the fact that the Eversons' claim may not amount to anything approaching the standard of "uselessness" is irrelevant.

¶ 58.   The question in this case is whether Pekin's insurance policy provides coverage to Lorenz for the negligent misrepresentation claim filed by Everson. The answer to this question lies in comparing the allegations of the claim set forth in the complaint to the terms of the insurance policy. *Id.* (citing *School Dist. of Shorewood v. Wausau Ins. Co.,* 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992)).

---

[1] Alternatively, I note that to the extent the term "accident" is ambiguous, it must be construed against an insurer and in favor of coverage. *Frost v. Whitbeck,* 2002 WI 129, ¶ 19, 257 Wis. 2d 80, 654 N.W.2d 225 (citing *Danbeck v. Am. Family Mut. Ins. Co.,* 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150).

¶ 59. When focusing on the nature of the claim, courts must liberally construe the allegations in the complaint and assume all reasonable inferences. *Doyle,* 219 Wis. 2d at 284. While the majority mouths this standard, it fails to apply it here. Majority op., ¶ 25. The relevant allegation is set forth in paragraph seven of the complaint. It states:

> 7. Subsequently, the Plaintiffs discovered that a substantial portion of Lot 31 lay within the 100[-] year flood plain making the construction of the home which they wished to construct on the property impossible in the location in which the Plaintiffs wished to build based upon the pre-sale representations of LORENZ, rendering the property unbuildable for the Plaintiffs and causing the Plaintiffs to incur damages as a result in excess of $37,000.

¶ 60. Although this paragraph does not use the "magic words" the majority apparently seeks, it should not have to do so. *See Smith,* 226 Wis. 2d at 817 (a complaint claiming negligent misrepresentation need only "contain some statement about physical injury to tangible property, some reference to loss of use, or some demand for relief beyond money damages . . . "). Here, the allegations are tantamount to a claim for "loss of use" under a liberal construction. The plaintiffs allege that a substantial portion of their property lay within the 100–year flood plain, making the construction of the home impossible in the location in which they wanted to build. They seek compensation based on Lorenz's negligent misrepresentation for out-of-pocket expenses, which are now useless to them. Accordingly, one can reasonably infer the "loss of use" of various items relating to that failed construction (e.g., excavation, concrete foundation, house plans, permits, etc.).

¶ 61. Likewise, I am satisfied that the complaint sufficiently alleges "causation" under a liberal construction. Again, the relevant language is found in paragraph seven: "[c]onstruction of the home which they wished to construct on the property [was] impossible in the location in which the Plaintiffs wished to build based upon the pre-sale representations of LORENZ . . . ." The majority dismisses this language, concluding that the " 'property damage' in this case was caused by the preexisting 100–year flood plain, not by any presale misrepresentation of Lorenz." Majority op., ¶ 39. However, for purposes of summary judgment, I believe it can be reasonably inferred that reliance on Lorenz's pre-sale representations caused the Eversons' damage. Accordingly, for the foregoing reasons I respectfully dissent.

¶ 62. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.