**2023 WI App 40**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2021AP670

†Petition for Review filed

Complete Title of Case:

**RIVERBACK FARMS, LLC,**

  **PLAINTIFF-APPELLANT,**

   **V.**

**SAUKVILLE FEED SUPPLIES, INC.,**

  **DEFENDANT-THIRD-PARTY PLAINTIFF,**

**SECURA INSURANCE MUTUAL CO.,**

  **DEFENDANT-THIRD-PARTY
  PLAINTIFF-RESPONDENT,†**

   **V.**

**MICHAEL FREUND AND INTEGRITY NUTRITION, INC.,**

  **THIRD-PARTY DEFENDANTS-APPELLANTS.**

---

| | |
|---|---|
| Opinion Filed: | July 26, 2023 |
| Submitted on Briefs: | August 30, 2022 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Lazar, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:       On behalf of the plaintiff-appellant and the third-party defendants-appellants, the cause was submitted on the briefs of *Justin F. Wallace* of *Mayer, Graff & Wallace, LLP*, Manitowoc, and *Scott Lawrence* of *Lawrence Law Office, S.C.*, Chilton.

Respondent
ATTORNEYS:       On behalf of the defendant-third-party-plaintiff-respondent, the cause was submitted on the brief of *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

**2023 WI App 40**

COURT OF APPEALS
DECISION
DATED AND FILED

**July 26, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP670**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV272

IN COURT OF APPEALS

RIVERBACK FARMS, LLC,

    PLAINTIFF-APPELLANT,

  V.

SAUKVILLE FEED SUPPLIES, INC.,

    DEFENDANT-THIRD-PARTY PLAINTIFF,

SECURA INSURANCE MUTUAL CO.,

    DEFENDANT-THIRD-PARTY
    PLAINTIFF-RESPONDENT,

  V.

MICHAEL FREUND AND INTEGRITY NUTRITION, INC.,

    THIRD-PARTY DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Reversed and cause remanded with directions.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1     LAZAR, J. Riverback Farms, LLC (Riverback) appeals from an order of the circuit court granting summary judgment to the insurer based on its conclusion that the undisputed facts failed to show an "occurrence" causing "property damage" under the insured cattle feed supplier's standard commercial general liability (CGL) insurance policies. Riverback contends that the circuit court erred in concluding that no insurance coverage could exist for physical injury to Riverback's cattle allegedly caused by the supplier's substitution of a component into the cattle's feed. We agree.

¶2     By their terms, the CGL policies cover liability for damages the insured is legally required to pay because of property damage caused by an "occurrence," defined in pertinent part as an "accident." As our supreme court recently held, an intentional act by an insured can lead to an occurrence—an accident—causing property damage. *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶35, 408 Wis. 2d 39, 992 N.W.2d 31. Here, while the feed supplier intentionally substituted a component into the feed, there are no facts to show that it did so to intentionally cause magnesium deficiency in the cattle—that could be an accident and constitute an unintended "occurrence." Moreover, the feed allegedly caused physical injury to tangible property—the cattle sustained physical symptoms including stomach ulcers, grass tetany, sole ulcers, and excessive calcium intake—as well as a reduction in the butterfat content of their milk. Lastly, the "impaired property" exclusion does not apply to these facts. Because coverage for an occurrence causing property damage could exist if liability on the merits is

2

established, the circuit court erred in granting summary judgment to the insurer. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. The Underlying Lawsuit

¶3 Riverback is a dairy farm in West Bend, Wisconsin, with approximately 1,000 Holstein cattle, 400 of which are milked. For more than forty years, Riverback purchased feed mix (rations) from Saukville Feed Supplies, Inc. In December 2015, Riverback's nutritionist, Integrity Nutrition, Inc., through its principal, Michael Freund, recommended a change to the rations for its dairy cows. That change included the addition of Min-Ad, a source of bio-available[1] magnesium and calcium. Instead of adding Min-Ad, though, Nick Laatsch, the owner of Saukville Feed, consulted with his own nutritionist and—allegedly after a conversation with Freund[2]—substituted a product called Fine Lime and included it in the rations. The dispute as to what Freund told Laatsch and whether the substitution was authorized is not relevant at this point.

---

[1] In the feed/dairy industry, "bio[-]availability" refers to the ability of an ingredient to be absorbed into the cattle's body. Freund sought to add a consistent level of bio-available magnesium to the feed for Riverback's herd because he considered it to be a "very important component to producing butterfat." The benefits of Min-Ad for dairy cows were established by "experience and peer-reviewed … research."

[2] Laatsch claims that Freund told him he could use another feed product as a substitute for Min-Ad. Laatsch claimed he "thoroughly checked it out, so [he] kept using fine lime." He "just figured that it would work." Freund disputes that he gave permission for the Fine Lime substitution and claims he told Saukville Feed that "the only acceptable substitution for [Min-Ad] would be something that's called M-Cal 450," and that the substitution was permissible only until Saukville Feed could order Min-Ad. There is nothing in the record to establish if M-Cal 450 was ever used.

¶4 Saukville Feed's own nutritionist had asked its main supplier whether a product called Waukesha Barnlime[3] had the same percentage of calcium and magnesium as Min-Ad. Its magnesium was, however, not as bio-available as the magnesium in Min-Ad. Regardless, Laatsch (of Saukville Feed), who does not know anything about magnesium bio-availability, decided on his own to use a more finely-ground version of Waukesha Barnlime called Fine Lime. All parties agree that Saukville Feed's substitution was intentional. According to Laatsch, Saukville Feed reviewed the request to include Min-Ad and determined in-house that Barnlime would be an adequate substitute. Laatsch stated that Saukville Feed did not intend, foresee, or expect that the substitution would have an adverse impact on the cattle. This evidence is undisputed.

¶5 Riverback asserts that its herd suffered physically during the time period from late December 2015 to mid-2018 when Fine Lime was added to the rations instead of Min-Ad. Riverback claims that the unauthorized substitution and its corresponding deficiency in bio-available magnesium led to health problems, including metabolic acidosis[4] and ulcers, sore feet (or "sole ulcers"), and grass tetany in its cattle. In addition, Riverback claims that the substitution of Fine Lime for Min-Ad negatively affected production during the period of unauthorized substitution in the form of reduced butterfat content in its herd's milk.

¶6 In 2016 and 2017, Riverback and Freund investigated the herd's decreased butterfat production and health issues. Freund attempted to verify that Saukville Feed was incorporating Min-Ad into the rations, but his requests for verification went unanswered. Freund avers he finally discovered that Saukville

---

[3] Waukesha Barnlime is typically spread on the barn floor so that cattle will not slip.

[4] Metabolic acidosis is a disease process that involves excess acid in the body.

Feed could not have been using Min-Ad when he was shown the rations invoices in July 2018. He realized that the significantly lower cost ($.08 instead of $.22 per pound) showed that the ingredient being incorporated did not include highly bio-available magnesium. It simply was not possible. After this discovery, when Fine Lime was finally replaced with the originally requested Min-Ad, the butterfat content of the Riverback herd's milk returned to 2015 levels.

¶7    Riverback filed a lawsuit against Saukville Feed and its insurance carrier, later identified as Secura Insurance, a Mutual Company, alleging various contract claims, and seeking to recover approximately $250,000 based on reduced production of butterfat during the period of unauthorized substitution and other incidental and consequential damages, including reimbursement for veterinary bills as well as hoof-trimming. Integrity Nutrition and Freund were joined as third-party defendants.

## II.    Secura's Motion for Declaratory Judgment

¶8    Secura moved to intervene, bifurcate the coverage dispute from the underlying lawsuit on the merits, stay the matter so the question of its insurance coverage could be resolved first, and for summary judgment seeking a declaration that it had no duty to defend or indemnify Saukville Feed against Riverback's claims. The circuit court concluded there was no initial grant of coverage because there was no "occurrence" and, while Saukville Feed could be legally liable to pay damages because of property damage to the cattle—veterinary and hoof trimming costs, for example—the claim based on reduced butterfat content (leading to lost profits) was not covered property damage. Thus, the court concluded that Secura had no further duty to defend or indemnify Saukville Feed in the underlying lawsuit.

All claims against Secura were dismissed. This appeal by Riverback, Freund, and Integrity Nutrition followed.[5]

## DISCUSSION

### I. General Principles Applicable to Insurance Coverage Disputes

¶9 Secura agreed to defend Saukville Feed in the underlying litigation under a reservation of rights, and moved for summary judgment seeking a declaration that it owes no duty to defend or indemnify Saukville Feed against Riverback's claims. Thus, we review the pleadings and submissions provided on summary judgment to determine whether coverage exists, or may exist, if the evidence results in liability against Saukville Feed following a trial on the merits. *See 5 Walworth*, 408 Wis. 2d 39, ¶13; *Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶29, 311 Wis. 2d 548, 751 N.W.2d 845. Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Our standard of review is de novo, and our review is also de novo because we must interpret and apply the terms of Secura's policies. *5 Walworth*, 408 Wis. 2d 39, ¶13.

¶10 "When analyzing whether an insurance policy provides coverage, we examine the terms of the policy and compare it to the facts of the record." *5 Walworth*, 408 Wis. 2d 39, ¶16. We employ a three-step process whereby we determine if the policy makes an initial grant of coverage, then examine the various

---

[5] This appeal is limited to review of the circuit court's March 31, 2021, coverage order. Pursuant to an order of this court (issued on March 10, 2022), Riverback's WIS. STAT. § 100.18 (2021-22) claim is outside the scope of this appeal. In addition, Saukville Feed did not participate in this appeal.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

policy exclusions to see whether any of them preclude coverage, and, should any exclusion apply, we look to see whether any exception to that exclusion reinstates coverage. *Id.* (citing *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65). Whether the standard CGL policies at issue here confer an initial grant of coverage depends on whether there has been "property damage" caused by an "occurrence." *See 5 Walworth*, 408 Wis. 2d 39, ¶16 (citing *American Girl*, 268 Wis. 2d 16, ¶32). The exclusion analysis "only comes into play in the second stage after a determination of an initial grant of coverage—that an occurrence caused property damage." *5 Walworth*, 408 Wis. 2d 39, ¶19. As such, the exclusions are not to be incorporated into the initial coverage determination. *Id.*

## II.     If Proven, Physical Injury to the Cattle Caused by the Fine Lime Substitution Could Constitute an "Occurrence."

¶11     Secura's CGL policies' insuring agreements cover liability for damages the insured is legally required to pay "because of … property damage" caused by an "occurrence." An "occurrence" under the policies is an "accident." While "accident" is not a defined term in the policy, "Wisconsin courts have interpreted identical policy language many times." *5 Walworth*, 408 Wis. 2d 39, ¶34. "Generally, an 'accident' is 'an event or condition occurring by chance or arising from unknown or remote causes,' or 'an event which takes place without one's foresight or expectation.'" *Id.* (quoting *American Girl*, 268 Wis. 2d 16, ¶37).

¶12     Secura contends Saukville Feed's intentional substitution of the feed component is not a covered occurrence because it was not an accident. As explained below, this argument does not comport with the policy language and well-established Wisconsin law construing the initial grant of coverage. While it is undisputed Saukville intentionally substituted the feed component, the record shows

7

that the resulting magnesium deficiency that allegedly caused physical harm to the cattle could have been "without … foresight or expectation," and thus an accident/occurrence.

¶13    Our supreme court's analysis in *5 Walworth* is determinative.  In that case, the court held that the facts, if proven, could constitute property damage caused by an occurrence. 408 Wis. 2d 39, ¶¶36, 38, 45, 48.  At issue was whether an accident occurred when water leaked into the surrounding soil from cracks in an in-ground pool installed by the insured general contractor, using an insured supplier's product (shotcrete) to construct the pool.  *Id.*, ¶¶1, 36.  The court held that while faulty installation of the pool and the provision of the defective product are not "occurrences," they may lead to, or cause, an occurrence that causes property damage:

> The improper installation of the shotcrete and the incorrect placement of the steel reinforcing bars are not enough on their own to constitute an occurrence; if proven, that is faulty workmanship.  But the record can support a conclusion that this faulty work caused the pool to crack and leak, and those cracks became worse as the pool leaked and destabilized the surrounding soil.  The cracks, leakage and soil damage could constitute accidents—unexpected and unforeseen events—caused by improper installation.  And these cracks and the damage to the surrounding soil also could constitute physical injuries to the homeowners' tangible property—i.e., property damage as defined by the policy.

*Id.*, ¶36; *see also id.*, ¶¶35, 38, 45, 48.

¶14    The court further underscored the point when addressing the use of an allegedly defective product:

> [T]he proper analysis based on the language of the policy is whether the defective shotcrete (assuming this is proven) led to an accident, which then caused property damage.  As we have discussed, the water leakage, among other things, is sufficient to constitute an accident.  And this led to cracking in the pool, further leakage, damage to the surrounding soil,

and eventually, replacement of this entire pool complex. If the shotcrete was defective, a jury could find that it led to an accident (water leakage at the very least) that caused property damage. Therefore, at this stage of the proceedings, [the] policy does not preclude an initial grant of coverage.

*Id.*, ¶45. Accordingly, *5 Walworth* held that "a trier of fact could conclude that [the CGL policy] provides an initial grant of coverage because there is property damage caused by an occurrence as those terms are defined in the policy." *Id.*, ¶36.

¶15 The *5 Walworth* court squarely based its decision on *American Girl, Kalchthaler v. Keller Constr. Co.*, 224 Wis. 2d 387, 397, 591 N.W.2d 169 (Ct. App. 1999), and *Acuity v. Society Ins.*, 2012 WI App 13, ¶24, 339 Wis. 2d 217, 810 N.W.2d 812. *5 Walworth*, 408 Wis. 2d 39, ¶¶17-20, 35. In *American Girl*, the property owner alleged that a general contractor breached its contract to construct a warehouse because faulty soil engineering advice, provided by a subcontractor, regarding how to compact the soil caused the soil and warehouse to settle excessively, leading to damage to the warehouse itself. *American Girl*, 268 Wis. 2d 16, ¶¶3-5. Our supreme court held that the act which breached the contract—the provision of faulty advice—led to an "occurrence"—unintended and unanticipated excessive settlement of the soil—which caused property damage. *Id.*, ¶¶5, 49.

¶16 Similarly, in *Kalchthaler* we held that although a subcontractor's supply of defectively constructed windows did not constitute an "occurrence," the installation of the windows led to an "occurrence"—the accidental infiltration of water through the windows causing property damage to the building. *Id.*, at 390-91, 397. In *Acuity*, faulty excavation techniques accidentally caused soil erosion and part of a building to collapse. 339 Wis. 2d 217, ¶17.

¶17 Thus, in *5 Walworth*, the supreme court again affirmed that an initial intentional act by the insured—the provision of goods, products or work—can set

9

in motion a chain of events that includes an accident, a covered occurrence, causing property damage. The focus is on whether the injury or damages was foreseeable or expected, not on whether the action that caused the damages was intended. Again, in *5 Walworth*, an intentional use of a particular product in installing a swimming pool allegedly led to accidental water leaks, soil disturbance, and damage to the pool complex. In *American Girl*, intentionally provided advice led to accidental excessive soil settlement and physical damage to a warehouse. In *Kalchthaler*, intentionally installed windows led to accidental water infiltration that caused physical damage to a building. And in *Acuity*, intentionally provided excavation techniques led to accidental soil erosion and partial collapse of a building. 339 Wis. 2d 217, ¶17; *see also United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶¶14-20, 304 Wis. 2d 750, 738 N.W.2d 578 (sale of contaminated property involved an occurrence notwithstanding the seller's representation to the purchaser that the land was not contaminated, which, by its very nature, was intentional).

¶18      Saukville Feed intentionally substituted the Fine Lime for Min-Ad in its feed ration, which allegedly caused property damage to Riverback's cattle. Based upon the evidence presented in the summary judgment record, however, a jury could find that Saukville Feed did not reasonably foresee or expect harm to result from that substitution, in which case the harm to the cattle would constitute an accident/occurrence.

### III.    The Physical Injury to the Cattle Constitutes Property Damage.

¶19    The next question with respect to an initial grant of coverage in this appeal is whether there was any damage to tangible property.  Secura's insurance policies define property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  CGL policies are "designed to insure against 'the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.'"  *5 Walworth*, 408 Wis. 2d 39, ¶15 (quoting ***Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.***, 2000 WI 26, ¶27, 233 Wis. 2d 314, 607 N.W.2d 276).

¶20    To find physical injury to tangible property, Wisconsin courts have held that there must be some form of physical alteration to the property.  ***Wisconsin Label***, 233 Wis. 2d 314, ¶31 ("[T]he phrase 'physical injury' ordinarily refers to some sort of physical damage.").  The court in ***Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.***, 2016 WI 14, 367 Wis. 2d 221, 876 N.W.2d 72, *reversed in part by* ***5 Walworth***,[6] also favorably cites ***Traveler's Insurance Co. v. Eljer Manufacturing, Inc.***, 258 Ill. Dec. 792, 813 (Ill. 2001), which held that physical damage encompasses "an alteration in appearance, shape, color, or in other material dimension."  *See also* ***Tweet/Garot-August Winter, LLC v. Liberty Mut.***

---

[6] Our supreme court in *5 Walworth* held that "[w]hile [it] overrule[d] *Pharmacal*'s improper incorporation of the integrated systems analysis into all CGL claims and its errant focus on damage to 'other property' when analyzing if there is 'property damage' [under the initial grant of coverage, it did] not address the decision's analysis on other matters." *5 Walworth LLC v. Engerman Contracting, Inc.*, 2023 WI 51, 408 Wis. 2d 39, ¶31, n.5, 992 N.W.2d 31, referencing *Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.*, 2016 WI 14, 367 Wis. 2d 221, 876 N.W.2d 72, *reversed in part by 5 Walworth*, 408 Wis. 2d 39, ¶3.

11

*Fire Ins. Co.*, No. 06-C-800, 2007 WL 445988, at \*5-6 (E.D. Wis. Feb. 7, 2007) (suggesting that our state supreme court in *Wisconsin Label* essentially adopted that definition from *Eljer Manufacturing*).[7]  The circuit court also relied upon this definition in its oral ruling in Secura's favor in this case.

¶21     Saukville Feed's expert on dairy cow nutrition, Dr. Michelle Wieghart, testified in her deposition that the Riverback dairy cattle were, in fact, physically injured.  Wieghart stated that the cattle suffered physical injury from the ulcers they incurred from metabolic acidosis.  She compared the sour stomach in a human with an ulcer to the sour stomach or "displaced abomasums" in cattle.[8]  It cannot be seriously disputed that the identified physical injuries to the cattle allegedly caused by the magnesium deficiency (metabolic acidosis, grass tetany, sore stomachs, hoof problems and ulcers) constitute property damage and a change of material dimension.  *See Schullo v. DeLaval, Inc.*, No. 2011AP1876, unpublished slip op. ¶¶6, 48 (WI App May 3, 2012) (considering mastitis in cattle to be a physical injury).[9]  Indeed, as it did before the circuit court, Secura acknowledges that these physical alterations constitute physical injury to tangible property, conceding that Riverback seeks to hold Saukville Feed liable for damages

---

[7] Unpublished Wisconsin cases, issued on or after July 1, 2009, may not be cited for precedential value, but may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b). Pursuant to Federal Rule of Appellate Procedures 32.1A, unpublished federal opinions, issued on or after January 1, 2007, may also be cited only for persuasive, not precedential value. This applies for all unpublished cases cited herein.

[8] Of the multiple stomachs of a ruminant, Freund refers to the "abomasum" as the "true stomach."

[9] This unpublished case also concluded that a loss of milk production would constitute loss of use of the tangible property. We need not reach this issue because there is already a possibility of covered damages, and the issue is inadequately briefed.

incurred because of physical injury to the cattle resulting in veterinary bills and hoof trimming costs. This acknowledged property damage is sufficient to establish the possibility of an initial grant of coverage, and thus, Secura's continuing duty to defend.[10]

### IV. The Impaired Property Exclusion Does Not Bar Coverage Because It Only Applies to Property that Has Not Been Physically Injured.

¶22 On appeal, Secura contends the impaired property exclusion applies to bar coverage.[11]

¶23 The relevant Secura CGL Policy exclusion states as follows:

**1. Exclusions**

This insurance does not apply to:

....

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

---

[10] We reject Secura's reliance on cases involving misrepresentation and other claims that did not result in any physical injury or loss of use to the property. *See* ***Smith v. Katz***, 226 Wis. 2d 798, 817, 595 N.W.2d 345 (1999) (concluding that the complaint failed to allege any misrepresentation caused property damage); ***Everson v. Lorenz***, 2005 WI 51, ¶¶23, 25, 280 Wis. 2d 1, 695 N.W.2d 298 (same); and ***Qualman v. Bruckmoser***, 163 Wis. 2d 361, 367, 471 N.W.2d 282 (Ct. App. 1991) ("Any property damage that existed in the home existed before the making of the alleged misrepresentations which are the theory of recovery in the complaint."); *see also* ***Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.***, 2000 WI 26, ¶32, 233 Wis. 2d 314, 607 N.W.2d 276 (holding labeling company was not entitled to coverage for labeling products with incorrect pricing since there was only diminution in value and no "physical injury" occurred to mislabeled products).

[11] Before the circuit court, Secura argued that the "contractual liability" exclusion also applied to bar coverage. The circuit court did not reach this issue, Secura does not raise it on appeal, and thus, we, too, decline to address this issue.

(1) A defect, deficiency, inadequacy or dangerous
condition in "your product" or "your work" ...

¶24 "Impaired property" is defined as "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because: (a) It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous." The impaired property exclusion also requires that the impaired property can be restored to use by repair, replacement, adjustment or removal of the product—the feed. In other words, the impaired property exclusion "addresses situations where a defective product, after being incorporated into the property of another, must be replaced or removed at great expense, thereby causing loss of use of the property." *Tweet/Garot-August Winter*, 2007 WL 445988, at *8.

¶25 Here, the facts show that the cattle were physically injured. Moreover, Riverback's claims do not relate to any incorporation of Saukville Feed's product or work into Riverback property, nor is there any suggestion that the feed the cattle ate could be repaired, replaced, adjusted, or removed. The exclusion does not apply.

## CONCLUSION

¶26 Saukville Feed's substitution of an ingredient into the Riverback cattle's feed rations allegedly led to unforeseeable and unexpected magnesium deficiency in the herd that caused physical injury to the cattle. If proven, this could constitute an occurrence causing property damage under Secura's CGL insurance policies. The impaired property exclusion does not apply to bar coverage.

¶27 Based upon the foregoing, the circuit court erred when it granted summary judgment in favor of Secura and dismissed it from this action. Accordingly, the order is hereby reversed and this matter is remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.