**2024 WI App 30**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:            2023AP1011

Complete Title of Case:


        JOHN MCLAUGHLIN, NANCY MCLAUGHLIN, WILLIAM FAUST
        AND JAN KIELP,

            PLAINTIFFS,

      V.

        GASLIGHT POINTE CONDOMINIUM ASSOCIATION, LTD,

            DEFENDANT-APPELLANT,

            V.

        AUTO-OWNERS INSURANCE COMPANY,

            INTERVENOR-RESPONDENT.


| | |
|---|---|
| Opinion Filed: | April 17, 2024 |
| Submitted on Briefs: | January 26, 2024 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Lazar, JJ. |
|     Concurred: | |
|     Dissented: | |

Appellant

ATTORNEYS: On behalf of the defendant-appellant, the cause was submitted on the briefs of *Anthony J. Anzelmo* and *Douglas M. Raines*, of *Husch Blackwell LLP*, Milwaukee.


Respondent
ATTORNEYS: On behalf of the intervenor-respondent, the cause was submitted on the brief of *William R. Wick* and *Patrick M. McDonald*, of *Nash, Spindler, Grimstad & McCracken LLP*, Waukesha.

COURT OF APPEALS
DECISION
DATED AND FILED

April 17, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2023AP1011**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022CV120

**IN COURT OF APPEALS**

---

JOHN MCLAUGHLIN, NANCY MCLAUGHLIN, WILLIAM FAUST AND JAN KIELP,

    PLAINTIFFS,

  V.

GASLIGHT POINTE CONDOMINIUM ASSOCIATION, LTD,

    DEFENDANT-APPELLANT,

  V.

AUTO-OWNERS INSURANCE COMPANY,

    INTERVENOR-RESPONDENT.

---

APPEAL from an order of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1    NEUBAUER, J.   Gaslight Pointe Condominium Association, Ltd. (Gaslight) appeals from an order of the circuit court granting a motion for declaratory/summary judgment filed by Auto-Owners Insurance Company (Auto-Owners).   The circuit court concluded that Auto-Owners does not owe duties to defend or indemnify Gaslight against claims asserted by the owners of two condominium units at the Gaslight Pointe condominium development which were allegedly damaged as the result of water intrusion.   Gaslight appeals, arguing that coverage exists under both a Commercial General Liability (CGL) Coverage Form and a Directors and Officers Errors and Omissions (E&O) Coverage Endorsement in Auto-Owners' policy.

¶2    As explained in greater detail below, we conclude that the CGL Coverage Form potentially covers some of the Owners' claimed damages.   The form provides coverage for "property damage" caused by an "occurrence" or accident. As our supreme court recently recognized, an intentional act by an insured can lead to an occurrence—an accident—that causes property damage. *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶35, 408 Wis. 2d 39, 992 N.W.2d 31.   Here, while Gaslight allegedly made certain decisions regarding building maintenance and repairs, a reasonable jury could conclude that those decisions were not made to intentionally allow water to continue to infiltrate the buildings.   That continued water intrusion could be an accident and constitute an "occurrence" that caused "property damage"—physical injury to the Owners' tangible property.   Moreover, Auto-Owners has failed to persuade us that several exclusions in the CGL Coverage Form preclude coverage for all of the Owners' claimed damages.

2

¶3     However, we agree with the circuit court that coverage is not available under the E&O Coverage Endorsement. The endorsement's insuring agreement applies to a limited category of compensatory damages and is also subject to an exclusion for "property damage." Gaslight has not shown that its claimed damages could be covered under the limited definition and exclusion. Nonetheless, because we conclude that coverage for some of the claimed damages is available under the CGL Coverage Form, Auto-Owners must continue to defend Gaslight in this case. Based upon these conclusions, we affirm the court's order in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

### I.     The Claims Against Gaslight

¶4     John McLaughlin, Nancy McLaughlin, William Faust, and Jan Kielp (collectively, Owners) filed a complaint against Gaslight in February 2022 seeking damages and injunctive relief in connection with alleged defects and damages in their townhome condominium units at Gaslight Pointe, a condominium development in Racine, Wisconsin. Gaslight, a non-stock Wisconsin corporation, serves as the condominium association for Gaslight Pointe under Gaslight Pointe's governing documents and WIS. STAT. ch. 703 (2021-22).[1]

¶5     According to the complaint, the McLaughlins and Faust/Kielp are couples who purchased townhome units at Gaslight Pointe in 2021. Their claims arise out of "serious and widespread water infiltration and associated issues" throughout Gaslight Pointe. The Owners allege that "the common areas on or

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

around [their] respective units are in disrepair and in need of major repairs, and have caused and continue to cause damage to [Owners'] properties." A report attached to the complaint documenting observations made during a May 2018 inspection at Gaslight Pointe discusses rotted exterior components and issues with siding, flashing, sheathing, and framing that, according to the report, likely allowed water to intrude into the interior of the buildings and moisture to be trapped behind the siding.

¶6      The Owners allege that Gaslight's board of directors "has established a pattern of neglecting reports of structural damage to the buildings[,] engaging unqualified contractors[,] and failing to supervise work." For example, the Owners allege that one "small company" was brought in to "replac[e] wood on some units where infiltration was too bad to ignore," but this work "was never supervised or re-inspected[,] … does not appear to be permitted, was clearly incomplete, and in many cases ineffective given the amount of issues remaining" in the Owners' units. The Owners also allege that the board "established a practice of denying responsibility for the maintenance of certain common elements[,] e.g.[,] garage doors."

¶7      The Owners allege that Gaslight's board of directors knew deficiencies in the condominium buildings needed to be addressed years before the Owners purchased their units but have not taken the steps necessary to fully resolve these issues. The Owners assert that Gaslight's failure in this regard is a breach of Gaslight Pointe's governing declaration and bylaws, which require Gaslight to maintain and repair common areas and elements of the condominium. They allege that this breach has caused their units to deteriorate physically and lose value and has forced them to hire contractors to inspect and repair the defects. The Owners seek damages "including but not limited to out-of-pocket expenses incurred in

investigating and repairing various defects and damages," attorney's fees, and an injunction compelling Gaslight to complete the maintenance and repairs necessary to address the defects damaging the Owners' units.

¶8      The specific defects at issue and damages sought by the Owners were further itemized in discovery. The Owners describe the McLaughlins' unit as being "in an advancing state of disrepair" due to: (1) leaky, nonfunctional, and rotting windows, siding, soffits, fascia, and gutters that allow water and rodents into the unit; (2) water intrusion through the roof which led to "significant water damage" in the office and garage, including a partial collapse of the garage ceiling; (3) "widespread mold" in the unit; and (4) water staining and discoloration of carpets within the unit. The Owners allege that Gaslight "suggested certain contractors address discrete issues within the McLaughlins' unit [but] never suggested an appropriate response to the systemic problems." In addition to the costs to repair this damage, the McLaughlins seek to recover certain "out-of-pocket losses due to [Gaslight]'s breach of its obligation to maintain the common elements at the Townhomes," including costs for environmental testing, consulting, structural engineering, furniture storage, legal fees, homeowner's association fees, property taxes, homeowner's insurance premiums, supplies, and a co-pay for a "CT Diagnostic Scan" for Mr. McLaughlin.[2]

¶9      The Faust/Kielp unit is alleged to have "similar defects and damages, although [it] is not in the advanced state of disrepair as the McLaughlins' unit." In written discovery responses, Faust and Kielp identified the following defects in their

---

[2] The Owners stated in discovery that they were not currently making any claims for personal injury but reserved their right to do so "for example, if [Gaslight] fails to remediate the mold and poor air quality and Mr. McLaughlin's breathing issues fail to improve." We assume this is still the Owners' position.

unit: (1) "roof leaks"; (2) "mold and air quality issues"; (3) "rotting wood and mold around sliding glass door trim"; (4) "staining"; and (5) "a leak through the ceiling vent in the loft area." In addition to repair costs, Faust/Kielp seek recovery of the following "out-of-pocket losses": (1) "Inability to move in fully upstairs/mold study/moving costs upstairs increased by 20%, $1,000"; (2) legal fees; and (3) consulting costs.

¶10 After the Owners commenced this lawsuit, Auto-Owners agreed to defend Gaslight while reserving its rights to contest coverage. Thereafter, Auto-Owners intervened in the case and filed a motion for declaratory/summary judgment, arguing that it had no duty to defend or indemnify Gaslight with respect to the Owners' claims.

## II. The Auto-Owners Policy

¶11 Auto-Owners issued three Tailored Protection Insurance policies to Gaslight covering a total policy period June 27, 2020, to June 27, 2023. The parties agree that the language in the three policies is identical or substantially similar in all material respects. Accordingly, we follow the parties' lead in referring to only one "policy."

¶12 Although Gaslight is a non-stock corporation, the named insured listed on the Declarations page of the policy is "Gaslight Pointe Condo Assoc LLC," which the policy identifies as a "Limited Liab Corp." Gaslight contends that it is the named insured and that the policy mistakenly identifies it as a limited liability company. Auto-Owners does not appear to dispute the point but argues that the policy's identification of Gaslight as an LLC bears on the application of several exclusions. At this point, we note only what appears on the Declarations page. We address the legal implications of that language below.

6

**A. The CGL Coverage Form**

¶13     The CGL Coverage Form contains an insuring agreement requiring Auto-Owners to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The insuring agreement provides further that the policy applies to "'bodily injury' or 'property damage' [that] is caused by an 'occurrence.'" "Property damage" is defined in part to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property." An occurrence under the policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶14     The insuring agreement is subject to multiple exclusions, two of which are relevant here. First, the CGL Coverage Form excludes coverage for "Damage to Property" as follows:

> This insurance does not apply to:
>
> ….
>
> **j. Damage To Property**
>
> "Property Damage" to:
>
> **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> ….
>
> **(4)** Personal property in the care, custody or control of the insured[.]

The word "you" in the CGL Coverage Form "refer[s] to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The CGL Coverage Form states further that "[i]f you are designated in the Declarations as … [a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business." The scope of who is an insured under the CGL Coverage Form is also expanded by an endorsement to include "each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy."

¶15 The second exclusion pertains to damage caused by fungi or bacteria. In relevant part, that exclusion states as follows:

> This insurance does not apply to:
>
> **Fungi Or Bacteria**
>
> **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

The exclusion defines "fungi" to include mold.

## B. The E&O Coverage Endorsement

8

¶16     The E&O Coverage Endorsement begins with an insuring agreement that obligates Auto-Owners to "pay those sums the insured becomes legally obligated to pay as 'damages' because of any negligent act, error, omission or breach of duty directly related to the management of the premises, shown in the Declarations, which occurs during the policy period." The term "damages" in the endorsement is limited to "actual compensatory damages for loss suffered but does not include fines, taxes or any other cost or expense assessed against any insured." The endorsement excludes coverage for, among other things, "'[b]odily injury', 'property damage' or 'personal and advertising injury[.]'"

### III.    The Circuit Court's Ruling

¶17     The circuit court held a hearing on Auto-Owners' motion in May 2023. After hearing arguments from the parties, the court concluded that the policy did not cover the Owners' claimed damages. With respect to the CGL Coverage Form, the court concluded that although the claimed damage to the Owners' units constituted property damage, it had not been caused by an occurrence but instead by Gaslight's "reasoned decisions" to delay making repairs to the buildings, which meant that the resulting water intrusion was "not something that happened accidentally, happened suddenly, or was unforeseen." To the extent there was an occurrence, however, the circuit court concluded that the "Damage To Property" exclusion would not bar coverage because "that exclusion applies to common elements and does not apply to the individual element of the insured's inside property." In addition, the court declined to consider whether the "Fungi Or Bacteria" exclusion applied "because we don't know the extent of [the Owners' claimed] damages that might occur or how."

¶18 Turning to the E&O Coverage Endorsement, the circuit court determined that "there is an initial grant of coverage" under that portion of the policy but that the exclusions for "property damage" and "bodily injury" barred coverage. Based on its conclusions, the court entered an order granting Auto-Owners' motion and declaring that it had no duty to defend or indemnify Gaslight against the Owners' claims.

### STANDARD OF REVIEW

¶19 Insurers may seek determinations of their obligations to their insureds through summary judgment or declaratory judgment. *Young v. West Bend Mut. Ins. Co.*, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196. "Under either procedural vehicle, our standard of review is de novo because we must interpret and apply the terms of [Auto-Owners'] policy." *See Wiegert v. TM Carpentry, LLC*, 2022 WI App 28, ¶19, 403 Wis. 2d 519, 978 N.W.2d 207.

¶20 "The methodology governing summary judgment is well-established and we need not repeat it in its entirety." *Progressive N. Ins. Co. v. Jacobson*, 2011 WI App 140, ¶7, 337 Wis. 2d 533, 804 N.W.2d 838. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

### DISCUSSION

¶21 Liability insurance policies typically impose two main duties—the duty to defend an insured against claims for damages and the duty to indemnify, or "cover," the insured if it is found liable. *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579. "The duty to indemnify and the duty to defend are separate contractual obligations." *Id.* Ordinarily, whether an

insurer has a duty to defend is determined through application of the four corners rule, which limits this court's analysis to the allegations in the complaint and the terms of the policy. *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285. However, where an insurer provides a defense and seeks a determination of its coverage obligation, a circuit court may look beyond the complaint and consider relevant extrinsic evidence in making that determination. *5 Walworth*, 408 Wis. 2d 39, ¶13 (stating that where insurer tenders a defense and seeks summary judgment as to coverage, courts base their analysis "on the full record, not just the complaint"). If the record forecloses any possibility of coverage, the insurer no longer has a duty to defend the insured. *Pamperin Rentals II, LLC v. R.G. Hendricks & Sons Constr., Inc.*, 2012 WI App 125, ¶5, 344 Wis. 2d 669, 825 N.W.2d 297.

¶22    Thus, we review the pleadings and submissions provided on summary judgment to determine whether coverage exists, or may exist, if Gaslight is ultimately found liable to the Owners. *See Riverback Farms, LLC v. Saukville Feed Supplies, Inc.*, 2023 WI App 40, ¶9, 409 Wis. 2d 14, 995 N.W.2d 257, *review denied* (WI Dec. 12, 2023) (No. 2021AP670).

¶23    Our analysis proceeds in three steps. "First, we determine if the policy 'makes an initial grant of coverage.'" *5 Walworth*, 408 Wis. 2d 39, ¶16 (quoting *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65). If it does not, our analysis ends; if it does, we then analyze whether any exclusions preclude coverage. *5 Walworth*, 408 Wis. 2d 39, ¶16. Finally, if an exclusion applies, we consider "whether any exception to that exclusion reinstates coverage." *Id.* (citation omitted). In interpreting policy language and applying it to the particular facts presented, we aim to give effect to the contracting parties' intent and construe the language "as it would be understood

11

by a reasonable person in the position of the insured." ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶6, 352 Wis. 2d 436, 842 N.W.2d 508 (2013).

## I.      The CGL Policy

### A. The Insuring Agreement

¶24      The CGL Coverage Form's insuring agreement provides coverage for "property damage" that is caused by an "occurrence." The circuit court concluded that the alleged damage to the Owners' units constitutes "property damage" because "there is physical injury to tangible property." Auto-Owners does not challenge this conclusion on appeal. Thus, we focus on whether that property damage was caused by an occurrence.

¶25      An "occurrence" under the policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although the policy does not define the word "accident," "Wisconsin courts have interpreted identical policy language many times." *5 Walworth*, 408 Wis. 2d 39, ¶34. "Generally, an 'accident' is 'an event or condition occurring by chance or arising from unknown or remote causes,' or 'an event which takes place without one's foresight or expectation.'" *Id.* (quoting ***American Girl***, 268 Wis. 2d 16, ¶37).

¶26      Auto-Owners contends that Gaslight's "reasoned decisions regarding how to (or how not to) maintain the premises" are not a covered occurrence because they were not an accident. Gaslight argues that even if its decisions regarding maintenance and repairs "could be viewed as deliberate," Wisconsin courts have recognized that such decisions can still lead to an occurrence.

12

¶27    We agree with Gaslight's argument concerning whether there is an "occurrence" here.  In a line of decisions, Wisconsin courts have explained that although an insured's deliberate or intentional conduct may not itself constitute an occurrence, it may "set in motion a chain of events that includes an accident, a covered occurrence, causing property damage." *Riverback Farms*, 409 Wis. 2d 14, ¶17.  For example, in *Kalchthaler v. Keller Construction Co*., 224 Wis. 2d 387, 397, 591 N.W.2d 169 (Ct. App. 1999), we concluded that a similar insuring agreement covered allegations that faulty installation of windows at a residential facility allowed water to leak into the building, damaging its interior and contents, because the leaks were an accident.  In *American Girl*, a soils engineer provided faulty advice that led to the settlement of soil surrounding a warehouse, which in turn damaged the building.  268 Wis. 2d 16, ¶¶13-14.  Relying on *Kalchthaler*, our supreme court concluded that the "inadequate site-preparation advice," though presumably given volitionally, led to an occurrence—the soil settlement—which caused property damage.  *American Girl*, 268 Wis. 2d 16, ¶¶38, 48.

¶28    More recently, *5 Walworth* involved claims arising from the allegedly faulty installation of an in-ground swimming pool, which caused the pool to crack and allowed water to leak into the surrounding soil.  408 Wis. 2d 39, ¶9.  Our supreme court held that although the contractor's faulty work was not itself an occurrence, the resulting "cracks, leakage, and soil damage could constitute accidents—unexpected and unforeseen events—caused by improper installation." *Id.*, ¶36.  Finally, in *Riverback Farms*, we concluded that an insured's intentional substitution of one ingredient for another in a cattle feed mixture could have caused an unforeseen or unexpected magnesium deficiency in the cattle that consumed the feed, which would be an occurrence.  409 Wis. 2d 14, ¶¶5, 18.

¶29      The fact pattern in the present case follows the same path as the cases discussed above: (1) an insured's conduct leads to (2) an event that (3) causes damage. Here, Gaslight allegedly made certain decisions regarding maintenance and repair work to the condominium buildings. The Owners allege that Gaslight "neglect[ed] reports of structural damage to the buildings; engag[ed] unqualified contractors" to fix the defects; "and fail[ed] to supervise [the repair] work." They allege that Gaslight has "suggested certain contractors [to] address discrete issues within the McLaughlins' unit, [but] never suggested an appropriate response to the systemic problems." The complaint provides several examples of Gaslight's alleged approach to these issues. It alleges that Gaslight "previously replaced the gutters near the living room windows, however, two separate contractors … believe that the current design will cause repeated window and mold damage." The Owners also allege that Gaslight's "proposed solution to the widespread water infiltration issues was caulking, which does not resolve the underlying defects and will only temporarily 'band aid' the problem."[3] As a result of Gaslight's decisions, the Owners allege, water continued to leak into the Owners' units, causing damage to the units and their contents.

¶30      Auto-Owners' (and the circuit court's) focus on Gaslight's "volitional" decisions as the occurrence is out-of-step with *Kalchthaler*, *American*

---

[3] In addition to the attempts referenced in the complaint to address the water intrusion and other issues, Gaslight points to evidence in the record documenting its retention of contractors in 2022 to repair the roof over the Owners' units and perform sealing work on the units' chimneys. These efforts post-date the filing of this lawsuit, and evidence documenting them was not filed with the circuit court until after its coverage ruling, so we do not base our decision upon them.

*Girl*, *5 Walworth*, and *Riverback Farms*.[4]  "The focus is on whether the injury or damages was foreseeable or expected, not on whether the action that caused the damages was intended."  *Riverback Farms*, 409 Wis. 2d 14, ¶17.  Though Gaslight's decisions regarding maintenance and repair are alleged to have been intentional, the record indicates those decisions led to the continued water intrusion, which caused alleged property damage.  The continued water intrusion is akin to the events that were occurrences in our prior cases—the water intrusion in *Kalchthaler*, the soil settlement in *American Girl*, the cracking and leaking of the pool in *5 Walworth*, and the magnesium deficiency in *Riverback Farms*.

¶31     We must next determine whether the continued water intrusion could be an occurrence under the policy.  The circuit court concluded it could not be because it "is not something that happened accidentally, happened suddenly, or was unforeseen."  We do not agree that that is the only conclusion that can reasonably be drawn from the record.  For example, the Owners allege that Gaslight undertook some steps to address the water intrusion issues in their units, such as replacing gutters and caulking areas in need of repair.  And there is no direct evidence that Gaslight intended or expected the water intrusion into the Owners' units to continue. To the contrary, as Gaslight notes, the fact that it took some steps to address the damage suggests it "did not expect or intend to cause damage to [the Owners'] units."  Drawing reasonable inferences in Gaslight's favor, as we must at this stage

---

[4] We reject Auto-Owners' reliance on cases involving misrepresentations because those acts did not lead to intervening events that constituted occurrences. *See* **Stuart v. Weisflog's Showroom Gallery, Inc.**, 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448; **Everson v. Lorenz**, 2005 WI 51, ¶3, 280 Wis. 2d 1, 695 N.W.2d 298.  We similarly reject Auto-Owners' reliance on **Schinner v. Gundrum**, 2013 WI 71, ¶68, 349 Wis. 2d 529, 833 N.W.2d 685, because that case involved intentional acts by an insured to host an underage drinking party that foreseeably led to one party guest intentionally assaulting another.  The supreme court determined that neither the insured's conduct nor the intervening event were accidental and the injuries to the victim were foreseeable. *Id.*, ¶¶67-70.  The facts in **Schinner** are materially distinguishable from those in the present case.

of proceedings, a jury could conclude that Gaslight neither foresaw nor expected the damage to the Owners' units that followed its attempts to repair its buildings. *See Pum v. Wisconsin Phys. Serv. Ins. Corp.*, 2007 WI App 10, ¶6, 298 Wis. 2d 497, 727 N.W.2d 346 (2006) ("[W]e draw all reasonable inferences from the evidence in the light most favorable to the non-moving party."). In that event, the continued water intrusion would constitute an occurrence under the policy. Accordingly, we conclude that the circuit court erred in concluding that the CGL Coverage Form could not, as a matter of law, provide an initial grant of coverage.

### B. The "Damage to Property" Exclusion

¶32     Auto-Owners argues that two exclusions bar coverage for some or all of the Owners' claimed damages. The first is the "Damage To Property" exclusion, which, as relevant here, bars coverage for property damage to:

- "[p]roperty you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason" and

- "[p]ersonal property in the care, custody or control of the insured[.]"

The circuit court agreed with Gaslight that this exclusion did not bar coverage for the Owners' claimed damages because these provisions apply only to damage to common areas or elements in the condominium buildings, whereas the property damage for which the Owners seek monetary relief is to their individual units and personal property.

¶33     Auto-Owners disagrees, arguing that the Owners are insureds under the CGL endorsement, and thus, the "Damage To Property" exclusion bars coverage

for their claimed damages. It grounds this argument in several policy provisions and Gaslight's governing documents.

¶34 In the policy, Auto-Owners focuses on the definitions of "you" and "insured." The word "you" in the CGL Coverage Form "refer[s] to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The Named Insured in the policy is "Gaslight Pointe Condo Assoc LLC," which the policy identifies as a limited liability company. Auto-Owners then points to language in the CGL Coverage Form stating that where a limited liability company is identified in the Declarations, its members "are also insureds, but only with respect to the conduct of your business." Auto-Owners notes that Gaslight's Declaration and By-Laws: (1) state that each unit owner also "own[s] an undivided interest in all common elements and facilities" at Gaslight; and (2) make each unit owner a "member" of Gaslight, which is exclusively responsible for "management and control" of the common elements.

¶35 Auto-Owners also notes that the preamble to the insuring agreement states that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who is An Insured." It then points to an endorsement to the CGL Coverage Form that amends Section II to include as insureds "each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy." Auto-Owners contends that these provisions make the Owners "you" and an "insured" for the purpose of the exclusion, and thus that the exclusion bars coverage for property damage to their property.

17

¶36    We do not agree with Auto-Owners' arguments.  First, we reject its reliance on provisions in the policy that turn on Gaslight's status as a limited liability company.  There appears to be no dispute that Gaslight is a non-stock corporation, not an LLC.  Gaslight's Declaration and By-Laws, as well as records from the Wisconsin Department of Financial Institutions filed in the circuit court, specifically identify Gaslight as a corporation.  Thus, the identification of Gaslight as a limited liability company in the policy appears to be a scrivener's error, which courts may overlook where necessary to carry out the parties' intent.  *See, e.g.*, ***Lardner v. Williams***, 98 Wis. 514, 521, 74 N.W. 346 (1898) (stating that if "by mistake or ignorance of the scrivener" a written memorialization of the parties' agreement is "not made in the proper form to carry out the agreement, then a court of equity has power to reform and enforce [it] as contemplated and agreed by the parties"); ***American States Ins. Co. v. First Fin. Ins. Co.***, No. C05-2098RSL, 2007 WL 4615503, at **3-4 (W.D. Wash. Dec. 28, 2007) (reforming insurance policy to reflect that limited liability company was the only insured where declarations page mistakenly identified a partnership as the insured).  It would be illogical to conclude that the policy was intended by the parties to insure an LLC that, so far as we know, has never existed.

¶37    Auto-Owner's conduct in this lawsuit also undermines its argument.  Auto-Owners has provided a defense to Gaslight notwithstanding the fact that the policy identifies Gaslight as an LLC.  Moreover, it specifically acknowledged in both its brief supporting its motion to intervene and its intervenor complaint that it issued the policy to "Gaslight Pointe Condominium Association, Ltd."  Having taken these steps, Auto-Owners cannot now seek to avoid its coverage obligations through the application of policy language that incorrectly treats Gaslight as an

LLC. Thus, we conclude that the Owners are not "you" for the purpose of the "Damage To Property" exclusion.[5]

¶38　We also disagree with Auto-Owners' contention that the Owners are "insureds" for the purpose of the exclusion. The endorsement upon which Auto-Owners relies makes the Owners insureds "only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy." As Gaslight notes, the portion of the premises "not reserved for [a] unit owner's exclusive use or occupancy" is the common areas. Thus, the Owners are insureds only with respect to "liability arising out of the ownership, maintenance or repair" of the common areas. Here, although the Owners have alleged defects in certain common areas, they do not seek to hold Gaslight liable for damage to those areas. Instead, they seek damages for the property damage to their individual units. The Owners are not "insureds" with respect to such liability, and thus, the exclusion does not bar coverage for their claims.

### C. The "Fungi Or Bacteria" Exclusion

¶39　The second exclusion Auto-Owners invokes is the "Fungi Or Bacteria" exclusion, which precludes coverage for property damage

> which would not have occurred, in whole or in part, but for the actual, alleged or threatened … existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any

---

[5] Even if we were to treat Gaslight as an LLC, and the Owners as members of that LLC, we would not find the "Damage To Property" exclusion applicable because the Owners would be insureds under the policy "only with respect to the conduct of [Gaslight's] business." Auto-Owners points to no evidence suggesting that the Owners were involved in any of the decisions Gaslight made regarding maintenance and repairs to its condominium buildings.

> other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

The exclusion also bars coverage for "loss, cost or expenses arising out of the abating, … cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, 'fungi' or bacteria."

¶40    Gaslight contends that the exclusion would completely bar coverage only if all of its claimed damages were attributable, at least in part, to mold.  We agree; if some of the damage in the units is attributable to water infiltration or other causes besides mold, the exclusion would not bar coverage for that damage.

¶41    Beyond that, it is premature to assess the applicability of the exclusion given the state of the record.  Evidence in the record indicates mold is present in both of the Owners' units.  However, the evidence does not indicate what portion, if any, of the property damage in the units "would not have occurred, in whole or in part, but for the … existence of, or presence of" mold.  Nor is it clear what portion, if any, of the monetary damages the Owners seek arises out of their efforts to assess, clean up, or otherwise respond to the mold.  Further factual development on these issues is necessary before a determination can be made as to whether and to what extent the exclusion bars coverage for the Owners' damages.

¶42    In sum, under the CGL policies, the continued water intrusion could be an accident and constitute an "occurrence" that caused "property damage"—physical injury to the Owners' tangible property.  The "Damage To Property" exclusion does not apply, and the fungi/bacteria exclusion does not preclude coverage for all of the Owners' claimed damages.  Because we conclude that coverage for some of the claimed damages is potentially available under the CGL

Coverage Form if Gaslight is ultimately found liable to the Owners, Auto-Owners must continue to defend Gaslight in this case.

## II. The E&O Coverage Endorsement

¶43 The E&O Coverage Endorsement provides a separate potential source of coverage in the policy. Like the CGL Coverage Form, the E&O Coverage Endorsement begins with an insuring agreement, which is followed by a list of exclusions. The insuring agreement states that Auto-Owners "will pay those sums the insured becomes legally obligated to pay as 'damages' because of any negligent act, error, omission or breach of duty directly related to the management of the premises[.]" The word "damages" in the insuring agreement is limited to "actual compensatory damages for loss suffered but does not include fines, taxes or any other cost or expense assessed against any insured."

¶44 The circuit court concluded that the Owners' claims triggered this initial grant of coverage. Auto-Owners concedes that the insuring agreement "suggests that there is a grant of coverage for 'loss' caused by Gaslight's failure to properly manage the condominium premises." We construe this statement as a concession that at least some of the Owners' claimed damages fall within the insuring agreement.

¶45 The circuit court also concluded that the coverage under the endorsement was barred by the exclusion for "property damage."[6] Gaslight disagrees, arguing that the exclusion does not bar coverage for at least some of the

---

[6] The definition of "property damage" in the CGL Coverage Form also applies in the E&O Coverage Endorsement. Thus, "property damage" in the endorsement means "physical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."

damages the Owners seek. It contends that the Owners seek "'actual compensatory damages' in the form of 'out-of-pocket expenses incurred in investigating and repairing various defects and damages.'" Gaslight identifies three such "out-of-pocket expenses" that the Owners seek to recover—attorney's fees, homeowner's association fees, and homeowner's insurance—that, in its view, are "unrelated to repair of property" and thus beyond the scope of the exclusion.

¶46 The parties do not direct us to any legal authority interpreting these policy provisions, nor has our research uncovered any. Nonetheless, construing the insuring agreement and the "[p]roperty damage" exclusion as a reasonable person in Gaslight's shoes would, we agree with the circuit court that the E&O Coverage Endorsement does not provide coverage for the Owners' claimed damages.

¶47 First, the "property damage" exclusion bars coverage for any damages that Gaslight may be found liable to pay to compensate the Owners for the "property damage" in their units. Gaslight does not appear to contest that proposition. In addition, Gaslight has failed to show that the attorney's fees, homeowner's association fees, and homeowner's insurance that it describes as "unrelated to repair of property" would be covered "damages" as that term is defined in the insuring agreement.

¶48 "In Wisconsin, attorney's fees are not an element of damages absent a statutory or contractual provision to the contrary." *Oakley v. Fireman's Fund of Wis.*, 162 Wis. 2d 821, 830, 470 N.W.2d 882 (1991). Gaslight does not identify a statute or contractual provision that would entitle the Owners to an award of attorney's fees. Nor does this case involve claims of bad faith, in which attorney's fees can be transformed into an element of compensatory damages. *See Stewart v. Farmers Ins. Grp.*, 2009 WI App 130, ¶14, 321 Wis. 2d 391, 773 N.W.2d 513.

Instead, an award of attorney's fees to the Owners would constitute a "cost or expense assessed against" Gaslight that is specifically excluded from the definition of "damages."

¶49    Gaslight has failed to show how the homeowner's association fees and homeowner's insurance are compensation for any loss the McLaughlins suffered and, thus, "damages." Gaslight has failed to explain why the McLaughlins were forced to pay homeowner's association fees and homeowner's insurance as the result of its alleged breach of the condominium documents. Presumably, the obligation to pay those expenses arose out of the McLaughlins' status as owners of a unit at Gaslight Pointe. Thus, we fail to see how an award of those expenses would be "actual compensatory damages for loss suffered."[7]

## CONCLUSION

¶50    For the reasons explained above, we affirm the circuit court's order with respect to the issue of coverage under the E&O Coverage Endorsement, reverse the order with respect to the issue of coverage under the CGL Coverage Form, and remand this case to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

.

---

[7] Because we conclude that the exclusion for "property damage" bars coverage under the E&O Coverage Endorsement, we need not address the two other exclusions upon which Auto-Owners relies—an exclusion for "transactions of any insured from which any insured gained any personal profit or advantage not shared equitably by the members of the association" and an exclusion for claims "made by you, your officers or your directors."